UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARTIN S. GRANOFF, AS TRUSTEE OF THE GRANOFF ACQUISITION TRUST | CIVIL ACTION<br><br>NO. 20-1909 |
| VERSUS | SECTION M (4) |
| BUOYANCE, INC., *et al.* | |

## ORDER & REASONS

Before the Court is a motion by defendants Buoyance, Inc. ("Buoyance"), Cecil Roebuck, Lydia J. Breighner, Float Nola, LLC f/k/a Flot Nola, LLC, IC Float-Con LLC f/k/a IT Float-Con, LLC, The Float Conference, LLC, Reset, LLC, The Roebuck Institute, LLC, Breighner Institute, LLC, and International Therapeutic Floatation Conference, LLC (collectively, "Defendants") to dismiss for *forum non conveniens*.[1] Plaintiff Martin S. Granoff, as trustee of the Granoff Acquisition Trust ("Granoff"), responds in opposition,[2] and Defendants reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting Defendants' motion because the contract contains a valid, mandatory, and enforceable forum-selection clause that chooses the state courts of North Carolina sitting in Cabarrus County as the exclusive venue for this action.

**I. BACKGROUND**

This matter concerns claims for damages related to an agreement for the partial assignment of note payments on a seller-financed business note. Until it closed in January 2018, Buoyance operated a flotation therapy spa in Huntersville, North Carolina.[4] In late 2017 and early 2018, Buoyance, through its owners Roebuck and Breighner, negotiated a deal with an

---

[1] R. Doc. 39.
[2] R. Doc. 40.
[3] R. Doc. 44.
[4] R. Doc. 38 at 5.

unrelated third party, First Float LLC, for it to purchase Buoyance's business assets and continue the flotation therapy spa business in Huntersville.[5] The deal was finalized in January 2018.[6] First Float purchased all of Buoyance's assets for $210,000 in cash, plus a $250,000 promissory note to be repaid over five years.[7]

Soon after the sale, Roebuck and Breighner sought note brokers to obtain a discounted lump sum in return for a portion of First Float's note payments over the next five years.[8] In May 2018, a note broker approached Granoff about the First Float note.[9] After reviewing the proposal and having discussions with Roebuck and Breighner about their plans for a flotation therapy spa business in New Orleans, Granoff entered into an agreement with Buoyance and its attorney Zachary M. Moretz for a partial assignment of First Float's note payments ("first partial assignment").[10] Under the first partial assignment, Granoff agreed to advance immediately to Buoyance $125,403 in return for the first $4,000 of each of First Float's next 48 note payments.[11] Thus, beginning on August 1, 2018, Granoff was entitled to $4,000 of the $5,069.10 that First Float owed to Buoyance on the note each month.[12] First Float would send the money to Moretz, who in turn would forward the agreed portion of the payment to Granoff.[13] First Float made payments as anticipated from August 2018 to December 2018.[14] The first partial assignment did not assign the First Float note to Granoff, and Granoff had no right to pursue collection efforts if First Float defaulted.[15] However, the first partial assignment included the following provisions:

> This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina. This Agreement is entered into, is solely to be

---

[5] *Id.*
[6] *Id.* at 6.
[7] *Id.*
[8] *Id.* at 7-9.
[9] *Id.*
[10] *Id.* at 9.
[11] *Id.*
[12] *Id.* at 10.
[13] *Id.* at 9.
[14] *Id.* at 10.
[15] *Id.* at 9.

2

performed in, and will be governed by, construed and enforced in accordance with the laws of the State of North Carolina, without regard to its conflicts of law rules. The parties hereby consent to the exclusive venue and personal jurisdiction of the North Carolina state courts sitting in Cabarrus County, North Carolina.[16]

In late December 2018, Granoff agreed to advance another $40,000 to Buoyance in exchange for the full payment ($5,069.10) owed by First Float over the next 47 months ("second partial assignment").[17] Buoyance also promised to Granoff a UCC security interest in otherwise-unencumbered equipment at Roebuck and Breighner's New Orleans flotation therapy spa.[18] Granoff was paid in accordance with the second partial assignment from January 2019 through April 2019.[19]

The payments to Granoff ceased in May 2019, after First Float allegedly discovered that Roebuck and Breighner grossly misrepresented what they sold to First Float.[20] Indeed, First Float sued Buoyance, Roebuck, and Breighner in North Carolina state court for fraud.[21] In August 2019, Granoff sent Buoyance and Roebuck notices of default regarding their failure to protect Granoff's and Buoyance's rights under the First Float note.[22] Granoff alleges that Roebuck, in response to the notices, falsely claimed that he had hired a North Carolina attorney to collect on the note.[23] In November 2019, Granoff demanded that Buoyance, Roebuck, and Breighner pay the arrearages under both the first and second partial assignments, and update Granoff on several issues related to the New Orleans flotation therapy spa business and the status of the North Carolina collection efforts.[24] Roebuck never replied.[25]

---

[16] R. Doc. 39-2 at 3-4.
[17] R. Doc. 38 at 10.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 11-14.
[21] *Id.* at 14.
[22] *Id.* at 16.
[23] *Id.*
[24] *Id.* at 16-17.
[25] *Id.* at 17.

On July 6, 2020, Granoff filed this suit.[26] Thereafter, on September 30, 2020, Buoyance and Roebuck entered into a consent judgment in First Float's North Carolina litigation against them admitting liability for breaches of contract and various torts, including fraud.[27] Buoyance and Roebuck also agreed to void the First Float note, destroying Granoff's revenue stream on the first and second partial assignments.[28] In this suit, Granoff alleges that all Defendants are liable – under theories of single business enterprise and corporate veil piercing – for fraud, unfair and deceptive trade practices, conversion, and tortious interference with business relations or contracts.[29] Granoff also alleges that Buoyance is liable for bad faith breach of contract and breach of fiduciary duties.[30]

## II.  PENDING MOTION

Defendants move to dismiss this action for *forum non conveniens* arguing that the first partial assignment includes a mandatory and enforceable forum-selection clause that selects a North Carolina state court as the proper forum.[31] Defendants further argue that the scope of the forum-selection clause encompasses all claims raised in this litigation.[32] Finally, Defendants argue that the public-interest factors to be considered in a *forum non conveniens* analysis cannot defeat the application of the forum-selection clause.[33]

In opposition, Granoff argues that the purported forum-selection clause is invalid under North Carolina law.[34] Granoff further argues that the forum-selection clause is not broad enough in scope to cover all claims or Defendants in this litigation.[35] Granoff also argues that the forum-

---

[26] R. Doc. 1.
[27] R. Doc. 38 at 18.
[28] *Id.*
[29] *Id.* at 19-26.
[30] *Id.* at 24-27.
[31] R. Doc. 39-1 at 1-5.
[32] *Id.* at 5.
[33] *Id.* at 5-6.
[34] R. Doc. 40 at 4-13.
[35] *Id.* at 14-16.

selection clause is unenforceable because it contravenes a strong public policy of Louisiana.[36] Finally, Granoff argues that the public-interest factors weigh against enforcing the forum-selection clause.[37]

### III.	LAW & ANALYSIS

A valid forum selection clause pointing to a state or foreign forum is properly enforced through the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60 (2013). Ordinarily, in ruling on a *forum non conveniens* motion, a district court "must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (citing *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794-95 (5th Cir. 2007)). "The private-interest factors include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766-67 (5th Cir. 2016) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "The public-interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 767 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6). The plaintiff's choice of forum is usually given significant, but not determinative, weight. *Id.* (citing *Atl. Marine*, 571 U.S. 62 at n.6).

---

[36] *Id.* at 17-19.
[37] *Id.* at 19-21.

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine*, 571 U.S. at 63 (internal quotation marks omitted). Thus, if there is a valid, mandatory, and enforceable forum-selection clause, the plaintiff's choice of forum is given no weight, and the plaintiff must establish that dismissal is unwarranted. *Weber*, 811 F.3d at 767 (citing *Atl. Marine*, 571 U.S. at 63-64). Also, the district court should consider only the public-interest factors, and not the private-interest ones, because the private-interest factors are deemed to weigh entirely in favor of the preselected forum. *Id.* (citing *Atl. Marine*, 571 U.S. at 64). Because the public-interest "'factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

The *Atlantic Marine* framework "presupposes that the forum-selection clause is valid and that the relevant dispute falls within its scope." *Fintech Fund, F.L.P. v. Horne*, 2020 WL 6588619, at *4 (5th Cir. Nov. 10, 2020) (citing *Atl. Marine*, 571 U.S. at 62 n.5). Most recently, the Fifth Circuit has observed that when the parties dispute the validity of the purported forum-selection clause, a court must first examine that question.[38] *Id.* at *5. Thus, a movant attempting to enforce a forum-selection clause must establish under the law dictated by the choice-of-law rules for the forum state, that the forum-selection clause (1) is valid, (2) has a scope that covers the claims at issue in the litigation, and (3) is mandatory. *Id.* at *4-8; *see also PCL Civil Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073-74 (5th Cir. 2020). If these criteria are

---

[38] Defendants argue that the validity of the forum-selection clause should not be analyzed separately from its enforceability. R. Doc. 44 at 1-4 (citing *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 2020 WL 1157613, at *6 (E.D. La. Mar. 10, 2020)). The Fifth Circuit in *Barnett*, they say, "explicitly did not decide the issue." *Id.* at 3 (citing *Barnett*, 831 F.3d at 308) (emphasis omitted). Nor did it decide "whether a federal court in a diversity case should look to federal law, state law or both when deciding whether a forum selection clause is valid." *Barnett*, 831 F.3d at 301. Nevertheless, for the purposes of this case, the Court will follow the Fifth Circuit's recent approach in *Fintech*, while acknowledging that the decision's unpublished status means that these issues are still not finally resolved in this circuit.

6

satisfied, a mandatory forum-selection clause will be enforced unless the non-movant establishes under federal law that the clause (1) is unenforceable, or (2) should not be enforced after consideration of the public-interest factors. *Fintech*, 2020 WL 6588619, at *4-8; *see also PCL Civil Constructors*, 979 F.3d at 1073-74.

At the outset, this Court must determine what substantive law should guide its interpretation of the forum-selection clause. "A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply." *Weber*, 811 F.3d at 770. As this Court is a Louisiana federal court and this a diversity case, Louisiana's choice-of-law rules apply. Article 3540 of the Louisiana Civil Code provides that "issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable." Accordingly, in Louisiana, "[i]t is well established that where parties to a contract stipulate the specific state law that will govern the contract, the choice-of-law provision must be given effect unless there is statutory or jurisprudential law to the contrary." *NorAm Drilling Co. v. E & PCo Int'l, LLC*, 131 So. 3d 926, 929 (La. App. 2013). As noted, the first partial assignment twice provides that it "will be governed by, construed and enforced in accordance with the laws of the State of North Carolina."[39] Thus, this Court will apply North Carolina law in construing the forum-selection clause.

---

[39] R. Doc. 39-2 at 3.

A. **Validity**

Granoff disputes the validity of the purported forum-selection clause. Relying on a 2015 decision by a North Carolina intermediate court, Granoff argues that the forum-selection clause is invalid because Cabarrus County is an improper venue.[40] In *A & D Environmental Services, Inc. v. Miller*, the North Carolina appellate court upheld the trial court's refusal to enforce a forum-selection clause specifying Mecklenburg County, North Carolina, as the exclusive venue for litigation under a non-compete agreement. The court looked to a century-old precedent of the North Carolina supreme court positing that "the general policy of [North Carolina] courts is to disregard contractual provisions to the effect that an action shall be brought either in a designated court or a designated county to the exclusion of another court or another county in which the action, by virtue of a statute, might properly be maintained." *A & D Env't*, 770 S.E.2d at 756 (quoting *Gaither v. Charlotte Motor Car Co.*, 109 S.E. 362, 363 (N.C. 1921)). The *A & D Environmental* court thus held "that a forum selection clause which requires lawsuits to be prosecuted in a certain North Carolina county is enforceable *only if* our Legislature has provided that said North Carolina county is a proper venue." *Id.* at 757 (emphasis in original). Otherwise, reasoned the court, the parties would be able to strip the legislature of its prerogative to regulate venue in North Carolina. *Id.* at 756-57. Granoff argues that the forum-selection clause in the first partial assignment is invalid for the same reason as was the clause at issue in *A & D Environmental* – namely, it specifies a certain North Carolina county (Cabarrus) as the exclusive venue when North Carolina's general venue provisions, as adopted by its legislature, provide that a different North Carolina county (Mecklenburg) would be the proper venue for suit because, in this instance, Buoyance had its registered office and did business there.[41]

---

[40] R. Doc. 40 at 10-13 (discussing *A & D Env't Servs., Inc. v. Miller*, 770 S.E.2d 755 (N.C. Ct. App. 2015)).
[41] *Id.* at 13.

8

Alas, due an intervening change in North Carolina law, Granoff's validity argument falls short. In 2017, the North Carolina legislature changed the law to permit parties to business contracts to designate a particular county in the state as the proper venue for a dispute concerning such a contract. Pursuant to North Carolina General Statute § 1G-4, parties to a business contract may bring an action in North Carolina state court if the contract contains (1) a choice-of-law provision specifying that North Carolina law governs their rights and duties under the contract, and (2) the parties' consent to litigate a dispute arising from the contract in North Carolina state courts. N.C. Gen. Stat. § 1G-4(a). If the business contract meets these two conditions, the parties consent, by operation of law, to the personal jurisdiction of North Carolina state courts for a dispute arising from the contract, and the parties also may specify in the contract one or more North Carolina counties as the proper venue for any such dispute. *Id.* § 1G-4(b)-(c).

The forum-selection clause at issue here tracks the requirements of § 1G-4. Granoff and Buoyance included in their business contract provisions choosing North Carolina law and consenting to litigation in North Carolina state courts. Thus, having satisfied these two preconditions under the statute, Granoff and Buoyance were permitted to designate and did designate a North Carolina county as the exclusive venue for any disputes between them. Hence, the forum-selection clause is valid under North Carolina law.

B. Scope

Granoff argues that the forum-selection clause is too ambiguous to determine whether some, none, or all of Granoff's claims fall within its scope.[42] Granoff argues that the specific sentence at issue refers only to venue and does not specify whether it covers claims "arising out

---

[42] *Id.* at 14-16.

9

of" or "related to" the contract.[43]  Thus, according to Granoff, it is impossible to determine whether the forum-selection clause applies to all of the parties and claims.[44]

The forum-selection clause in the first partial assignment choosing venue in Cabarrus County, North Carolina, must be read in conjunction with the prior two sentences which state that "This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina," and that "This Agreement is entered into, is solely to be performed in, and will be governed by, construed and enforced in accordance with the laws of the State of North Carolina, without regard to its conflicts of law rules."[45]  When these sentences are read together, it is apparent that the parties agreed to litigate claims concerning the formation, performance, or enforcement of, or related to, their "Agreement" in the North Carolina courts sitting in Cabarrus County.  At their core, each of Granoff's claims – whether fraud, unfair trade practices, conversion, tortious interference, breach of contract, or breach of fiduciary duty – is premised on the formation or performance of the contract.  Further, Granoff alleges that all the Defendants are so intertwined as to warrant piercing the corporate veil and treating them as a single business enterprise.  Granoff is the master of his complaint and crafted the allegations as to have the parties and claims encompassed within the reach of the forum-selection clause.

### C. Mandatory

The parties do not dispute that the forum-selection clause is mandatory.[46]  Thus, it is not necessary for the Court to undertake an analysis of this question.

---

[43] *Id.*
[44] *Id.*
[45] R. Doc. 39-2 at 3-4.
[46] R. Doc. 40 at 16.  Granoff concedes that the forum-selection clause is mandatory in nature because North Carolina courts have found such clauses that include the word "exclusive," as this one does, to be mandatory.  *See Halifax Linen Serv., Inc. v Tidelife, LLC*, 2019 WL 2812412, at *3-4 (E.D.N.C. July 2, 2019) ("Mandatory forum selection clauses recognized by North Carolina appellate courts have contained words such as 'exclusive' or 'sole' or 'only' which indicate that the contracting parties intended to make jurisdiction exclusive.") (brackets omitted).

### D. Enforceablity Under Federal Law

"Federal law applies to determine the enforceability of forum selection clauses," even if the federal court is sitting in diversity. *PCL Civil Constructors*, 979 F.3d at 1074 (citation omitted). Courts apply "a strong presumption in favor of the enforcement of mandatory forum selection clauses," so the party resisting the enforcement of such a clause "bears a heavy burden of proof." *Id.* (quotation marks and citations omitted). When "a litigant in federal court attempts to have a case dismissed based on a contractual provision requiring suit to be filed in state court, the forum-selection clause should be upheld unless the party opposing its enforcement can show that the clause is unreasonable" by demonstrating that:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008), and *Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. 1997), respectively) (internal quotation marks omitted).

Granoff argues that the enforcement of the forum-selection clause would contravene a strong public policy of Louisiana that prohibits forum-selection clauses from being enforced against plaintiffs alleging claims under Louisiana unfair trade practices laws.[47] The statutes cited by Granoff apply to actions brought by the Louisiana attorney general, not private parties. *See* La. R.S. 51:1407. Moreover, the parties have agreed to apply North Carolina law, not Louisiana law, to their contract. Therefore, no public policy concern is implicated by enforcement of the forum-selection clause.

---

[47] R. Doc. 40 at 17-18.

Granoff also argues that enforcement of the forum-selection clause will effectively deprive him of his day in court because he anticipates that Defendants will not engage in litigation in North Carolina, but rather will allow any action brought there to be determined by a default judgment or an unopposed motion for summary judgment, and that such judgments are generally required to be relitigated in bankruptcy courts.[48] Granoff's argument is unpersuasive as it depends on events or contingencies that cannot be known at this time. He does not explain why such judgments would be "worthless" in other equally conceivable circumstances or why there is "grave inconvenience or unfairness" for a sophisticated Florida trustee to litigate in North Carolina as opposed to Louisiana. Granoff can still have his day in court if he so desires.

### E. Public-Interest Factors

The public-interest factors likewise weigh in favor of dismissal. Granoff does not present any comparison of case congestion in this Court versus the North Carolina state court in Cabarrus County. Rather, he argues that the Cabarrus County court does not appear to have implemented electronic filing.[49] But congestion, not e-filing, is the test for the administrative difficulties sought to be addressed by the first public-interest factor. Granoff also argues that "[t]his is a purely local controversy" and that Louisiana has the real interest in deciding cases involving "local frauds."[50] While both Louisiana and North Carolina may share an interest in dispensing justice in this case, and though the actions upon which Granoff's claims are based allegedly occurred, at least in part, in both Louisiana and North Carolina, the parties chose to have North Carolina law apply to their contract and the Cabarrus County court to address their disputes. That court is more experienced than this one in applying North Carolina law. The first and second partial assignments called for the payments to be made to a remittance agent

---

[48] *Id.* at 18-19.
[49] *Id.* at 20.
[50] *Id.*

(Moretz's law firm) located in Cabarrus County. It hardly seems unfair, then, that the citizens of this county may be called upon to serve as jurors to help resolve a dispute related to these agreements. Thus, Granoff has not shown this to be the kind of "truly extraordinary case" in which the public-interest factors outweigh a valid forum-selection clause. *See Weber*, 811 F.3d at 776.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to dismiss for *forum non conveniens* (R. Doc. 39) is GRANTED, and this matter is dismissed without prejudice.

New Orleans, Louisiana, this 18th day of December, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE