UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARTIN S. GRANOFF, AS TRUSTEE       CIVIL ACTION
OF THE GRANOFF ACQUISITION
TRUST                                NO. 20-1909

VERSUS                               SECTION M (4)

BUOYANCE, INC., *et al.*

**ORDER & REASONS**

Before the Court is a motion by plaintiff Martin S. Granoff, as Trustee of the Granoff Acquisition Trust ("Granoff"), for new trial[1] on this Court's order and judgment dismissing this matter for *forum non conveniens*.[2] Defendants Buoyance, Inc. ("Buoyance"), Cecil Roebuck, Lydia J. Breighner, Float Nola, LLC f/k/a Float Nola, LLC, IC Float-Con LLC f/k/a IT Float-Con, LLC, The Float Conference, LLC, Reset, LLC, The Roebuck Institute, LLC, Breighner Institute, LLC, and International Therapeutic Flotation Conference, LLC (collectively, "Defendants") respond in opposition.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies Granoff's motion.

**I.   BACKGROUND**

**A.   Granoff's business dealings with Buoyance**

This matter concerns claims for damages related to an agreement for the partial assignment of note payments on a seller-financed business note. Until it closed in January 2018, Buoyance operated a flotation therapy spa in Huntersville, North Carolina.[4] In late 2017 and early 2018,

---

[1] R. Doc. 47.
[2] R. Docs. 45 & 46.
[3] R. Doc. 48.
[4] R. Doc. 38 at 5.

Buoyance, through its owners Roebuck and Breighner, negotiated a deal with an unrelated third party, First Float LLC, for it to purchase Buoyance's business assets and continue the flotation therapy spa business in Huntersville.[5] The deal was finalized in January 2018.[6] First Float purchased all of Buoyance's assets for $210,000 in cash, plus a $250,000 promissory note to be repaid over five years.[7]

Soon after the sale, Roebuck and Breighner sought note brokers to obtain a discounted lump sum in return for a portion of First Float's note payments over the next five years.[8] In May 2018, a note broker approached Granoff about the First Float note.[9] After reviewing the proposal and having discussions with Roebuck and Breighner about their plans for a flotation therapy spa business in New Orleans, Granoff entered into an agreement with Buoyance and its attorney, Zachary M. Moretz, for a partial assignment of First Float's note payments ("first partial assignment").[10] Under the first partial assignment, Granoff agreed to advance immediately to Buoyance $125,403 in return for the first $4,000 of each of First Float's next 48 note payments.[11] Thus, beginning on August 1, 2018, Granoff was entitled to $4,000 of the $5,069.10 that First Float owed to Buoyance on the note each month.[12] First Float would send the money to Moretz, who in turn would forward the agreed portion of the payment to Granoff.[13] First Float made payments as anticipated from August 2018 to December 2018.[14] The first partial assignment did not assign the First Float note to Granoff, and Granoff had no right to pursue collection efforts if

---

[5] *Id.*
[6] *Id.* at 6.
[7] *Id.*
[8] *Id.* at 7-9.
[9] *Id.*
[10] *Id.* at 9.
[11] *Id.*
[12] *Id.* at 10.
[13] *Id.* at 9.
[14] *Id.* at 10.

First Float defaulted.[15] However, the first partial assignment included the following provisions:

> This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina. This Agreement is entered into, is solely to be performed in, and will be governed by, construed and enforced in accordance with the laws of the State of North Carolina, without regard to its conflicts of law rules. The parties hereby consent to the exclusive venue and personal jurisdiction of the North Carolina state courts sitting in Cabarrus County, North Carolina.[16]

In late December 2018, Granoff agreed to advance another $40,000 to Buoyance in exchange for the full monthly payment ($5,069.10) owed by First Float over the next 47 months ("second partial assignment").[17] Buoyance also promised to Granoff a UCC security interest in otherwise-unencumbered equipment at Roebuck and Breighner's New Orleans flotation therapy spa.[18] Granoff was paid in accordance with the second partial assignment from January 2019 through April 2019.[19]

The payments to Granoff ceased in May 2019, after First Float allegedly discovered that Roebuck and Breighner grossly misrepresented what they sold to First Float.[20] Indeed, First Float sued Buoyance, Roebuck, and Breighner in North Carolina state court for fraud.[21] In August 2019, Granoff sent Buoyance and Roebuck notices of default regarding their failure to protect Granoff's and Buoyance's rights under the First Float note.[22] Granoff alleges that Roebuck, in response to the notices, falsely claimed that he had hired a North Carolina attorney to collect on the note.[23] In November 2019, Granoff demanded that Buoyance, Roebuck, and Breighner pay the arrearages under both the first and second partial assignments, and update Granoff on several issues related

---

[15] *Id.* at 9.
[16] R. Doc. 39-2 at 3-4.
[17] R. Doc. 38 at 10.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 11-14.
[21] *Id.* at 14.
[22] *Id.* at 16.
[23] *Id.*

3

to the New Orleans flotation therapy spa business and the status of the North Carolina collection efforts.[24]  Roebuck never replied.[25]

### B. Proceedings leading to the dismissal for *forum non conveniens*

On July 6, 2020, Granoff filed this suit.[26]  Thereafter, on September 30, 2020, Buoyance and Roebuck entered into a consent judgment in First Float's North Carolina litigation against them admitting liability for breaches of contract and various torts, including fraud.[27]  Buoyance and Roebuck also agreed to void the First Float note, destroying Granoff's revenue stream on the first and second partial assignments.[28]  In this suit, Granoff alleges that all Defendants are liable – under theories of single business enterprise and corporate veil piercing – for fraud, unfair and deceptive trade practices, conversion, and tortious interference with business relations or contracts.[29]  Granoff also alleges that Buoyance is liable for bad faith breach of contract and breach of fiduciary duties.[30]

On November 30, 2020, Defendants moved to dismiss this action for *forum non conveniens* arguing that the first partial assignment included a mandatory and enforceable forum-selection clause that selects a North Carolina state court as the proper forum.[31]  Defendants argued that the scope of the forum-selection clause encompassed all claims raised in this litigation.[32]  Defendants also argued that the public-interest factors to be considered in a *forum non conveniens* analysis cannot defeat the application of the forum-selection clause.[33]

---

[24] *Id.* at 16-17.
[25] *Id.* at 17.
[26] R. Doc. 1.
[27] R. Doc. 38 at 18.
[28] *Id.*
[29] *Id.* at 19-26.
[30] *Id.* at 24-27.
[31] R. Doc. 39-1 at 1-5.
[32] *Id.* at 5.
[33] *Id.* at 5-6.

Granoff opposed the motion, arguing that the purported forum-selection clause is invalid under North Carolina law.[34] He also argued that the forum-selection clause is not broad enough in scope to cover all claims or Defendants in this litigation,[35] the forum-selection clause is unenforceable because it contravenes a strong public policy of Louisiana,[36] and the public-interest factors weigh against enforcing the forum-selection clause.[37]

On December 21, 2020, this Court issued its Order & Reasons granting Defendants' motion.[38] After explaining the proper framework for analyzing a forum-selection clause, this Court held that under the applicable North Carolina law, the forum-selection clause at issue is valid, mandatory, and enforceable, and encompasses the claims at issue in this litigation.[39] The Court also held that the public-interest factors weighed in favor of dismissal.[40]

With respect to validity, this Court held that North Carolina changed its law in 2017, pursuant to North Carolina General Statute § 1G-4, to permit parties to business contracts to designate a particular county in the state as the proper venue for a dispute concerning such a contract if the contract contains (1) a choice-of-law provision specifying that North Carolina law governs their rights and duties under the contract, and (2) the parties' consent to litigate a dispute arising from the contract in North Carolina state courts.[41] If the business contract meets these two conditions, the parties consent, by operation of law, to the personal jurisdiction of North Carolina state courts for a dispute arising from the contract, and the parties may specify in the contract one

---

[34] R. Doc. 40 at 4-13.
[35] *Id*. at 14-16.
[36] *Id.* at 17-19.
[37] *Id.* at 19-21.
[38] R. Doc. 45. A corresponding judgment was entered the next day. R. Doc. 46.
[39] R. Doc. 45 at 5-12 (applying framework articulated in *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60-64 (2013), and its progeny).
[40] *Id.* at 12-13.
[41] *Id.* at 9 (citing N.C. Gen. Stat. § 1G-4(a)).

or more North Carolina counties as the proper venue for any such dispute.[42]

Because the parties' forum-selection clause tracks the requirements of § 1G-4, this Court held that the clause is valid under North Carolina law.[43] Granoff and Buoyance included provisions in their business contract choosing North Carolina law and consenting to litigation in North Carolina state courts. Having satisfied these two preconditions under the statute, Granoff and Buoyance were permitted to designate, and did designate, a specific North Carolina county as the exclusive venue for any disputes between them.[44]

**II.   PENDING MOTION**

On January 19, 2021, Granoff filed the instant motion for new trial seeking reconsideration of this Court's holding concerning the "validity" component of its *forum non conveniens* analysis.[45] Granoff again argues that the forum-selection clause is not valid under North Carolina law.[46] According to Granoff, North Carolina case law forbids forum-selection clauses that destroy or exclude venue provided by statute, and this jurisprudence was not overridden by North Carolina General Statute § 1G-4.[47] Granoff further argues that this Court made an improper *Erie* guess in determining that § 1G-4 changed North Carolina law because neither that state's appellate court nor its supreme court has ruled on the issue.[48] He contends that § 1G-4 is, at best, ambiguous and, therefore, this Court should look to its legislative history which, he says, demonstrates that the statute does not clearly abrogate prior North Carolina precedent.[49]

---

[42] *Id.* (citing N.C. Gen. Stat. § 1G-4(b)-(c)).
[43] *Id.*
[44] *Id.*
[45] R. Doc. 47.
[46] *Id.*
[47] R. Doc. 47-1 at 3-5.
[48] *Id.* at 5-8.
[49] *Id.* at 9-11.

In opposition, Defendants argue that Granoff has not met the burden for the extraordinary remedy of a new trial.[50] Characterizing Granoff's argument as "mental gymnastics," Defendants maintain that, on a plain reading, North Carolina General Statute § 1G-4 allows for a forum-selection clause in a business contract as long as the prescribed statutory prerequisites are met.[51] Because those requirements are met in this case, the parties' forum-selection clause – including their choice of an exclusive venue – is valid and binding.[52] Defendants posit that it is unnecessary to reference the legislative history of a clear and unambiguous statute; the legislative history Granoff attaches to his motion constitutes inadmissible hearsay the Court should not consider; and even if it did consider it, the legislative history does not support Defendants' reading of the statute.[53]

## III. LAW & ANALYSIS

### A. Rule 59 Standard

A Rule 59(e) motion for reconsideration calls into question the correctness of a judgment. *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Under the rule, a movant must show that reconsideration is necessary (1) to correct a manifest error of law or fact upon which the judgment is based; (2) to consider newly discovered evidence that was previously unavailable; or (3) to address an intervening change in the controlling law. *Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020). Granoff's motion urges the first of these grounds, seeking the correction of what he contends is a legal error.[54]

---

[50] R. Doc. 48 at 1-2.
[51] *Id.* at 2-3.
[52] *Id.*
[53] *Id.* at 4-5.
[54] R. Doc. 47 at 1.

"A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." *In re Self*, 172 F. Supp. 2d 813, 816 (W.D. La. 2001). The motion "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)). And while a district court has considerable discretion to grant or deny a Rule 59(e) motion for reconsideration, *see Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993), the grant of such a motion is an "extraordinary remedy that should be used sparingly." *Indep. Coca-Cola Emps.' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 143 (5th Cir. 2004).

    **B. Analysis**

        **1. Forum-selection clauses under North Carolina law**

Granoff's argument is rooted in North Carolina's evolving treatment of forum-selection clauses. In 1921, the North Carolina supreme court expressed its hostility to forum-selection clauses when it invalidated a clause attempting to limit venue to a particular North Carolina county. *Gaither v. Charlotte Motor Car Co.*, 109 S.E. 362, 364 (N.C. 1921). The court explained that, at the time, "the general policy of the courts [was] to disregard contractual provisions to the effect that an action shall be brought either in a designated court or in a designated county to the exclusion of another court or another county in which the action by virtue of a statute might properly be maintained." *Id.* at 363. Noting that "[t]he regulation of venue is a matter within the discretion of the Legislature," the court reasoned that if parties could contractually prescribe a forum different from the venue defined by statute, they would effectively strip courts of otherwise viable jurisdiction over a particular matter, and thus impinge on the legislative prerogative. *Id.* The court

8

observed that "[t]he overwhelming weight of authority [was at that time] against the exercise of such right." *Id.* at 364.

Fast forward seven decades, to 1992, when the North Carolina supreme court upheld a forum-selection clause that chose a venue outside the state. *Perkins v. CCH Computax, Inc.*, 423 S.E.2d 780, 784 (N.C. 1992), *superseded by statute in part*, N.C. Gen. Stat. § 22B-3. The court explained that *Gaither*, which forbade forum-selection clauses selecting a North Carolina county other than those counties permitted under the state's general venue provisions, was still good law. *Id*. at 782. In *Perkins*, the court upheld a forum-selection clause that chose a forum *outside* of North Carolina. *Id.* Reexamining *Gaither*'s jurisdiction-stripping rationale, the *Perkins* court noted: *"*Generally, courts no longer view forum selection clauses as ousting the courts of their jurisdiction. Forum selection clauses do not deprive the courts of jurisdiction but rather allow a court to refuse to exercise that jurisdiction in recognition of the parties' choice of a different forum." *Id.* The court in *Perkins* recounted the United States Supreme Court's more recent conclusion that "forum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Id.* at 783 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Therefore, although *Perkins* recognized the validity of some forum-selection clauses, it did not disturb *Gaither*'s holding "that parties could not by stipulation strip the Legislature of its power to determine which counties in North Carolina would be proper to maintain an action." *A & D Env't Servs. v. Miller*, 770 S.E.2d 755, 756 (N.C. App. 2015).

In that vein, the North Carolina appellate court in *A & D Environmental* expressly recognized in 2015 that under *Gaither* and *Perkins*, "a forum selection clause which requires lawsuits to be prosecuted in a certain North Carolina county is enforceable *only if* our Legislature

9

has provided that said North Carolina county is a proper venue." *Id.* at 757. At the same time, courts in North Carolina came to view forum-selection clauses more favorably, at least in regard to non-consumer loan transactions. *See, e.g., SED Holding, LLC v. 3 Star Props., LLC*, 784 S.E.2d 627, 630 (N.C. App. 2016) ("In 1992, our Supreme Court held forum selection clauses are valid, enforceable, and consistent with public policy that also allowed choice of law and consent to jurisdiction provisions."); *Halifax Linen Serv., Inc. v. Tidelife, LLC*, 2019 WL 2812412, at *3 (E.D.N.C. July 2, 2019) ("Forum-selection clauses are valid under North Carolina law.").

In 2017, the North Carolina legislature made provision for the kind of forum-selection clauses noted in *A & D Environmental*, when it adopted General Statute § 1G-4 titled "Choice of North Carolina forum in business contracts," which provides:

> (a)  Choice of Forum. – Notwithstanding any other provision of law, a party to a business contract may bring an action in the courts of this State for a dispute arising from the business contract if the business contract contains both of the following provisions:
>
>    (1)  A provision where the parties agree that North Carolina law shall govern their rights and duties in whole or in part, pursuant to G.S. 1G-3.
>
>    (2)  A provision where the parties agree to litigate a dispute arising from the business contract in the courts of this State.
>
> (b)  Personal Jurisdiction and Forum Non Conveniens. – A party that enters into a business contract that satisfies the requirements of subsection (a) of this section consents to the personal jurisdiction of the courts of this State in an action for a dispute arising from the business contract. A court shall not stay or dismiss the action pursuant to G.S. 1-75.12 or the doctrine of forum non conveniens.
>
> (c)  Choice of Venue. – Notwithstanding any other provision of law, the parties to a business contract that satisfies the requirements of subsection (a) of this section may designate in the business contract one or more counties in this State as the proper venue for a dispute arising from the business contract. If the parties do not designate a county in the business contract, a party may bring an action for a dispute arising from the business contract in any county in this State.
>
> (d) Change of Venue. – In an action that is brought in a county in this State permitted by subsection (c) of this section, a court may change the place of trial to

10

another county in this State pursuant to G.S. 1-83(2), 1-83(3), or 1-84 only. Nothing in this subsection allows a court to change the place of trial to another state.

### 2. Application of North Carolina law to the forum-selection clause at issue

As this Court has already held, the business contract in this case – the partial assignment – satisfies both requirements of subsection (a). First, both parties agreed that their contract "shall be governed by and construed in accordance with the laws of the State of North Carolina."[55] Second, the parties also agreed to litigate in the courts of North Carolina.[56] Having cleared subsection (a)'s two hurdles, the parties were free to and did avail themselves of subsection (c)'s choice of venue by agreeing specifically that their disputes must be litigated in "the exclusive venue and personal jurisdiction of the North Carolina state courts sitting in Cabarrus County, North Carolina."[57] Therefore, the parties' choice of Cabarrus County is a valid exercise of their right to designate "one or more counties in [North Carolina] as *the* proper venue for a dispute arising from the business contract." N.C. Gen. Stat. § 1G-4(c) (emphasis added). This case thus involves a straightforward application of an unambiguous statute. The statute plainly lays out certain requirements for choosing a particular venue, and the parties incorporated them into their contract. Consequently, this Court's holding to honor their choice should be uncontroversial.

And, yet, Granoff argues that this Court made an inappropriate *Erie* guess in applying § 1G-4 since neither North Carolina's supreme court nor its lone intermediate court has construed the statute as a departure from North Carolina's more restrictive jurisprudence concerning forum-selection clauses. But in enacting § 1G-4 the legislature did make a distinct change in North Carolina law, and the change is consistent with the state's trend toward more favorable treatment

---

[55] R. Doc. 39-2 at 3-4.
[56] *Id.*
[57] *Id.*

of forum-selection clauses. It is hardly surprising, then, that the North Carolina legislature acted to push this trend over the finish line for business contracts. And it is fitting for this to have been done by the legislature. North Carolina courts have consistently reaffirmed the role of the legislature in regulating venue. Now that the legislature has acted to shift the forum-selection landscape, courts, including this one, are bound to follow its clear, straightforward directive. Granoff urges this Court to examine § 1G-4's legislative history to interpret this "ambiguous" statute. But, again, the statute is not ambiguous. Hence, the Court cannot consider the legislative history. *See Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013) ("The task of statutory interpretation begins and, if possible, ends with the language of the statute. When the language is plain, we 'must enforce the statute's plain meaning, unless absurd.'") (quoting *In re Nowlin*, 576 F.3d 258, 261-62 (5th Cir. 2009)); *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 510 S.E.2d 159, 163 (N.C. 1999) ("Where the language of a statute is clear, the courts must give the statute its plain meaning; however, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent."). In the end, as the Fifth Circuit recognizes, there is no better basis for making an *Erie* guess than the plain language of a clear and unambiguous statute. *See, e.g., Quilling v. Schonsky*, 247 F. App'x 583, 586 n.2 (5th Cir. 2007) ("the statute's plain meaning is the best guide to the [state] Supreme Court's likely view").

However, even if this Court were to consider the unsworn history provided by Granoff,[58] it reveals the legislature's intention to make North Carolina a more business-friendly state by

---

[58] Granoff submits with his motion an earlier draft of what became subsection (c) of § 1G-4 (R. Doc. 47-2 at 10) which reads in pertinent part: "If the business contract designates that an action or proceeding may be maintained only in a specific North Carolina county or counties, then one of the designated counties is the only proper venue in which to maintain such action or proceeding." He argues that the legislature's deletion of the modifier "only" from the final version of the statute (*see supra* at 10) shows that the legislature did not intend to abrogate *Gaither*'s holding or, at least, calls into question its intent to do so. First, the final wording of the statute is the best expression of the legislature's intent and entails no ambiguity, including any arising from the omission of this modifier. Second the modifier "only" appears to have been redundant given the legislature's use of the definite article "the" before the phrase "proper venue." Thus, inserting the word "only" before the phrase adds nothing to the legislature's provision

giving parties contractual freedom to choose their venue ahead of any conflicts. In doing so, parties entering business contracts gain a measure of control and predictability with respect to their preferred situs for resolving any disputes arising from the contracts.

In short, this case must be heard in Cabarrus County because the parties, in the exercise of their freedom to contract, expressly and specifically made that choice when they entered into their agreement. Thus, there is no manifest error of law in this Court's prior judgment, and a new trial is not warranted.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Granoff's motion for new trial (R. Doc. 47) is DENIED.

New Orleans, Louisiana, this 11th day of February, 2021.

_____<br>
BARRY W. ASHE<br>
UNITED STATES DISTRICT JUDGE

---

that "parties to a business contract … may designate in the business contract one or more counties in this state as *the* proper venue for a dispute arising from the business contract." N.C. Gen. Stat. § 1G-4(c) (emphasis added). Third, the deletion of "only" was paired with the inclusion of the phrase "one or more" counties. There cannot be "only" one venue when the parties have the opportunity to choose multiple counties as the proper venue. This is another potential explanation for the edit before enactment. Fourth, and full circle, because the legislature does not state why it eliminated the word, and the final text of the statute is plain and unambiguous, this case teaches again the wisdom of avoiding an examination of legislative history in such instances. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 369-90 (2012).